1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JUDY A. RAUSCH, | **CASE NO. EDCV 16-0732-KS** |
| Plaintiff | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL,[1]  Acting Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

On April 19, 2016, Plaintiff, Judy A. Rausch ("Plaintiff"), filed a Complaint seeking judicial review of a denial of her application for a period of disability and ("benefits").  (Complaint, ECF No. 1.)  On May 11, 2016 and May 18, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Consents, ECF Nos. 8, 10.)  On November 22, 2016, the parties filed a Joint Stipulation, whereby Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for further administrative proceedings; and Defendant seeks an order affirming the Commissioner's decision

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

or, in the alternative, remanding the matter for further administrative proceedings. (Joint Stip., ECF No. 15).   The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In a decision dated January 12, 2010, Plaintiff, who was born on December 5, 1963 was found to be disabled as of March 14, 2005.  (A.R. 95-100; 192, 197, 254; Joint. Stip. 2 stating, in error as March 14, 2004.)  By notice dated January 17, 2012, her benefits were terminated based on finding that her health had improved sufficiently for her to resume working as of January 2012.  (A.R. 103-06.)  Plaintiff requested reconsideration but was unsuccessful.  (A.R. 107-09; 117-25.)  On May 1, 2014 Administrative Law Judge Sharilyn Hopson ("ALJ") presided over a hearing, which included testimony by an impartial vocational expert ("VE"), a medical expert ("ME"), Dr. Ostrow and Plaintiff who was represented by an attorney and was 50 years old at the time.  (A.R. 62-91; 132-33.)  In a written decision dated May 29, 2014, the ALJ found that, due to improvement in her medical condition, Plaintiff's disability ended as of January 17, 2012 (A.R. 26-36).  On February 19, 2016, the Appeals Council denied Plaintiff's request for review of that decision. (A.R. 1-7.)  Plaintiff then filed this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ utilized the eight-step sequential evaluation process to determine whether Plaintiff continued to be disabled.  20 C.F.R. § 404.1594.  At the first step, the ALJ noted that Plaintiff did not engage in substantial gainful activity through the date her disability ended on January 17, 2012, and noted that the favorable determination of disability dated January 12, 2010 was the "comparison point

decision" ("CPD") in this case.  (A.R. 28.)  At the second step, the ALJ found that Plaintiff had severe impairments due to lumbosacral discogenic disease and lumbar spondylosis with radicular pain, and describes record evidence which supports that finding.   (A.R. 28.)   The ALJ found, however, that those impairments or combination of impairments did not meet or "equal" the criteria contained in the appropriate listings contained in 20 C.F.R., Part 404, Subpart P, Appendix 1, and listed documents in the record to support that finding.  (A.R. 29.)

At the third step, the ALJ determined that medical improvement had occurred as of January 17, 2012 on the basis of medical evidence—including objective tests and medical opinions.  (A.R. 29.)  Proceeding to step four, the ALJ determined that the medical improvement identified in step three, related to Plaintiff's ability to work because as of January 17, 2012, Plaintiff's impairments no longer met or equaled the same listings that were met at the time of the CPD.  (A.R. 29.)

At step six, the ALJ determined that Plaintiff's current impairments nevertheless continued to be severe, and proceeded to assess, at step seven, Plaintiff's residual functional capacity ("RFC") for performing her past relevant work, in light of her current impairments.  (A.R. 30-31.)

In her RFC assessment, the ALJ considered Plaintiff's testimony, the statements of Plaintiff's husband, Mr. Dahl, objective medical data in the form of MRI, X-ray and other tests, and the opinions of ME, Dr. Ostrow, and Drs. Hoang, Lederhaus, Ries, Lynch, Steiger, Phillips, and Friedman—though she rejected the testimony of Plaintiff and her husband as not entirely credibly because of inconsistencies and lack of corroboration by the record.  (A.R. 31-34.)  The ALJ also gave little weight to the opinions of Drs. Ostrow, Phillips, Friedman, Hoang, Steiger, and Lynch for overstating Plaintiff's functional abilities, inconsistencies

with the record including medical evidence, lack of explanation for assessing limitations, and internal inconsistencies in their own opinions.  (A.R. 34-35.)

Consequently, the ALJ assessed that Plaintiff had the RFC to perform the following:

 Lift or carry ten pounds occasionally and ten pounds frequently; stand or walk for two hours and sit for six hours, in an eight-hour work day, but should be allowed to stand and stretch every hour, estimated to take one to three minutes each hour; only occasionally use foot pedals with the bilateral lower extremities; only occasionally climb stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; only frequently perform overhead work bilaterally; and avoid extreme cold, unprotected heights, and work with moving and dangerous machinery.

(A.R. 31.)

Presented with these limitations (including a variance for lifting and carrying twenty pounds occasionally, and standing and walking for six hours out of an eight out day), the VE testified that Plaintiff would still be able to do her past relevant work both per the DOT and as actually performed.  (A.R. 84-85.)  However, if the hypothetical individual needed additional unscheduled breaks of 20 to 30 minutes up to three times a day, the VE testified that Plaintiff would not "be employable in the open labor market."  (A.R. 86.)

Based on the record and the VE's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as an accounting clerk, account representative and office manager, as of January 17, 2012, even with the assessed

RFC and limitations. (A.R. 36 citing DOT # 216.482-010; 241.357-010; 169.167-034.) Accordingly, the ALJ found that Plaintiff's disability ended as of January 17, 2012. (A.R. 36.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The Court will also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation

omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination'" or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

Courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014).

**DISCUSSION**

Plaintiff challenges the ALJ's decision on the sole basis that: in making the RFC assessment, the ALJ committed harmful legal error in granting little or no weight to the physical function assessments of treating physician Dr. Lynch and examining physician Dr. Steiger. (Joint Stip. at 4.) For the reasons discussed below, the Court finds no reversible legal error in the ALJ's decision and concludes the Commissioner's decision must be affirmed.

I.      **Applicable Law**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison*, 759 F.3d at 1012; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). An ALJ errs when he discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, if a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it is entitled to controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). If, on the other hand, the Commissioner determines that a treating physician's opinion does not meet this test for controlling weight, the treating physician's opinion is still entitled to deference and may be rejected only if the ALJ articulates "clear and convincing" reasons supported by substantial evidence for

1  doing so. *Id.* at 1160-61; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

2

3  Nevertheless, an ALJ does not commit legal error *per se* by according greater

4  weight to the opinion of a nonexamining State agency physician than to the

5  contradictory opinion of a treating physician. *See, e.g.*, *Morgan v. Comm'r of. Soc.*

6  *Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999). Instead, an ALJ may reject the

7  contradicted opinion of a treating physician if the ALJ articulates "specific and

8  legitimate" reasons for doing so and those reasons are supported by substantial

9  evidence in the record. *Garrison*, 759 F.3d at 1012; *Hill v. Astrue*, 698 F.3d 1153,

10  1159-60 (9th Cir. 2012).

11

12  **II.   The Medical Evidence**

13

14  Plaintiff's medical file contains records from several doctors including Dr.

15  Marc Lynch, a treating pain management specialist (A.R. 404-16, 461-69, 472-75,

16  508-10), Dr. Ralph Steiger, an examining orthopedic surgeon (A.R. 452), Dr. Jeffrey

17  Ries, a treating neurologist (A.R. 376-79), Dr. Scott Lederhaus (A.R. 386, 388), Dr.

18  Jong Hahn, a radiologist who first interpreted a February 20, 2013 MRI of

19  Plaintiff's lumbar spine (A.R. 385), and Dr. Anh Tat Hoang, a state agency

20  examining orthopedic surgeon (A.R. 299-304). The ALJ noted that several medical

21  opinions were inconsistent with each other, and relied on the opinions of Drs. Ries

22  and Lederhaus, as corroborated by Dr. Hanh and the testifying ME, while affording

23  little weight to the other physicians' opinions in the record.  (A.R. 31-35.)

24  Specifically, the ALJ assigned little weight to the opinions of Dr. Steiger and Dr.

25  Lynch after noting that those opinions were in conflict with the opinions of other

26  medical sources, including Drs. Ries and Lederhaus.

27  //

28  //

8

### III.   The ALJ's Evaluation of Dr. Steiger's Opinion

On February 21, 2014, on referral from her attorneys, Plaintiff presented to orthopedic surgeon Dr. Ralph Steiger for examination and evaluation (A.R. 443-53). Based on that examination, Dr. Steiger noted Plaintiff's complaints as constant neck pain and mid and low back pain that requires her to use a walking stick on occasion to assist with ambulation.  (A.R. 444.)  Dr. Steiger described Plaintiff's job prior to March 14, 2005 as a contract representative involving standing, walking, climbing, squatting, kneeling, sitting, twisting, bending, pushing, pulling, grasping, gripping, reaching, overhead work, typing, writing, lifting 25-40 lbs., exposure to dust, gas, fumes, and noise.  (A.R. 44.)

Dr. Steiger's physical examination of Plaintiff's cervical and lumbar spine resulted in findings of tenderness and limited ranges of motion as to both.  (A.R. 445-49).  Dr. Steiger reviewed several diagnostic studies.  From a February 20, 2013 MRI of Plaintiff's lumbar spine he noted disc bulges and degenerative disc disease. (A.R. 449.)  From X-rays of Plaintiff's lumbar spine dated January 23, 2013, he found mild degenerative disc disease and facet disease of the lower lumbar spine. (*Id.*)  From an MRI of Plaintiff's lumbar spine dated March 29, 2005, Dr. Steiger found bulging of disc without central canal or neural foraminal stenosis, and no associated nerve root compression.  (*Id.*)  Lastly, he found "unremarkable" an MRI of Plaintiff's thoracic spine dated April 7, 2006. (A.R. 450.)

Dr. Steiger also diagnosed Plaintiff with musculoligamentous sprain of the lumbar spine with lower extremity radiculitis; disc bulges at three lumbar levels; degenerative disc disease at two lumbar levels; and musculoligamentous sprain of the cervical spine with upper extremity radiculitis (A.R. 451-52). Dr. Steiger opined that Plaintiff's "disability has last [sic] at least 12 months and is expected to

continue indefinitely," and that her condition is permanent, will not change, and will remain the same.  (A.R. 452.)

In an Impairment Questionnaire completed in March 27, 2014, Dr. Steiger estimated that in a regular, eight-hour workday Plaintiff could sit for a total of between one and two hours and stand/walk between two and three hours; that she would have to get up and move around every 30 minutes for 10 to 15 minutes each time; that she could lift and carry up to 10 pounds occasionally but no amount of weight frequently; that she could no more than occasionally perform fine or gross manipulations or reach with either arm; that she would need to take unscheduled breaks every 30 minutes for 10 to 15 minutes each; and that she would likely miss two to three workdays per month due to her symptoms (A.R. 456-58).  In the form questionnaire, he indicated that Plaintiff's limitations applied earlier than December 14, 2012, and specifically stated that those limitations would apply from March 14, 2005 (A.R. 458).

When as here, an examining physician's opinion is contradicted by another doctor, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."  *Hill*, 698 F.3d at 1159.  At least two of the ALJ's reasons for giving little weight to Dr. Steiger's opinion appear to satisfy the standard outlined in *Hill*.

A. The ALJ Provided Specific and Legitimate Reasons in Evaluating the Opinion of Dr. Steiger.

The ALJ gave little weight to Dr. Steiger's opinion based on Dr. Steiger's finding of neck pain when other sources—including treating sources did not describe any such pain.  (A.R. 33.)  Reviewing Dr. Lynch's treatment notes in the

record, the Court confirms that that Dr. Lynch did not describe neck pain in his treatment notes. (*See generally* A.R. 395-426, 459-67, 470-88.) Indeed, Plaintiff's complaints consistently focused on her back and legs, although given the connection between the neck and back, it is not unreasonable to infer that physicians examining and treating her back would also examine her neck. *Cf. Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (finding that an ALJ improperly rejected the opinion of a physician who assessed an additional restriction which no other physician had, because that restriction was wholly unrelated to the plaintiff's chief complaints and the ALJ's reasoning therefore rested on an inference that could not be reasonably drawn from the record.) Moreover, treating neurologist Dr. Ries and examining neurologist Dr. Lederhaus *did* examine Plaintiff's neck, and expressly noted the absence of any neck pain, stating that Plaintiff's range of motion in her neck was within normal limits. (A.R. 376-78, 386, 388.) Accordingly, this specific reason for affording little weight to Dr. Steiger is supported by substantial evidence in the record.

The ALJ also afforded little weight to Dr. Steiger's opinion because Dr. Steiger did not provide any explanation for indicating that the limitations he assessed following his 2014 examination applied since 2005. (A.R. 35.) The ALJ specifically faults Dr. Steiger for failing to explain medical improvement demonstrated by Plaintiff's MRI and X-rays in 2013. (*Id.*) For instance, based on the March 29, 2005, MRI of Plaintiff's lumbar spine Dr. Steiger found bulging of disc without central canal or neural foraminal stenosis, and no associated nerve root compression. (*Id.*) Based on the February 20, 2013 MRI of Plaintiff's lumbar spine, he noted disc bulges and degenerative disc disease. (A.R. 449.) While the precise implications of these two notations are unclear, it appears that Dr. Steiger observed differences between the February 20, 2013 MRI and the March 20, 2005 MRI, but did not explain those differences or discuss whether and how they

1   impacted his finding that the limitations he assessed in 2014 applied since 2005.

2   Indeed, Dr. Steiger's February 21, 2014 report notes that Plaintiff's "disability has

3   last [sic] at least 12 months," but does not account for the approximately 9-year

4   period between 2005 and 2014.[2]

5

6   The ALJ need not accept Dr. Steiger's opinion that his assessed limitations

7   applied since 2005 if that opinion was brief, conclusory and inadequately supported

8   by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see*

9   *also* 20 C.F.R. § 404.1527(c)(2); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.

10  1995) (finding that an ALJ properly rejected physician's determination where it was

11  "conclusory and unsubstantiated by relevant medical documentation.")  Indeed, the

12  Ninth Circuit has affirmed the rejection of portions of a physician's opinion where

13  contradictory opinions by other physicians offered greater detail in medical

14  information. *Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (discrediting a

15  treating physician's opinion in favor of those based on more detailed and

16  comprehensive information.)  In light of Dr. Steiger's facially disparate descriptions

17  of the two MRIs (and the existence of conflicting interpretations of the MRIs by

18  other medical sources in the Plaintiff's file), the Court finds Dr. Steiger's assessment

19  that Plaintiff's limitations date back to 2005 to be brief, conclusory and inadequately

20  supported.  Accordingly, the ALJ has provided at least two specific and legitimate

21  reasons for affording little weight to Dr. Steiger's opinion.

22  //

23  //

24  //

25  //

26

27  [2] Although the ALJ did not specifically reference this statement by Dr. Steiger, and the Court cannot substitute its

28  discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (internal quotation marks and citation omitted).

B. <u>The ALJ Properly Resolved Conflicts in the Medical Evidence.</u>

To the extent the ALJ rejected Dr. Steiger's opinion on the basis that his interpretation of the MRI conflicted with others in the record, the Court finds that the ALJ properly resolved any conflicts beforehand.

As the parties concede, the ME agreed during the hearing that doctors may interpret the same MRI differently. (A.R. 73; Joint Stip. 11, 16.) It follows, therefore, that while some doctors may note an improvement based on the February 20, 2013 MRI when compared to the March 29, 2005 MRI, others might not. Where medical opinions conflict, the ALJ must weigh the credibility of the sources and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence," and her interpretation need not be exclusive. *Tommasetti*, 533 F.3d at 1041; s*ee generally Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (the specific and legitimate standard was met where the ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings").

Here, the ALJ resolved the conflict by affording more weight to the doctors who found improvement in the February 20, 2013 MRI than those who did not, and supported her reasoning with ample references to substantial evidence in the record. *Thomas*, 278 F.3d at 957. In her decision, the ALJ found that medical evidence revealed a decrease in severity of Plaintiff's impairments as of January 17, 2012. (A.R. 29.) The ALJ relied on MRI and x-rays of Plaintiff's lumbar spine as interpreted by Drs. Lederhaus, Hanh, and Ries, and discussed each of those physician's discussion of the MRIs and X-rays in detail while comparing them Dr. Steiger's findings. (A.R. 29-30.) *See Magallanes*, 881 F.2d at 755

Although the ALJ gave little weight to the opinion of a consultative examiner, Dr. Hoang that Plaintiff was generally capable of light work because he overstated her functional abilities (A.R. 35), she nevertheless noted that in November 2011, Dr. Hoang observed that radiographic studies of Plaintiff's lumbar spine were "essentially negative" and showed no fracture, destructive bone changes, normal joints and alignment. (A.R. 301-02 *cited by* ALJ at A.R. 29.)  Dr. Lederhaus, who examined Plaintiff on January 25, 2013, also reported that X-rays of her lumbar spine on January 23, 2013, and his examination findings were normal.  (A.R. 386 *cited by* ALJ at A.R. 30.)  Dr. Lederhaus stated that Plaintiff's objective test results from January 2013 reflected normal alignment, bone height and preserved disc height, whereas her March 29, 2005 MRI demonstrated disc bulges (though without stenosis).  (A.R. 386 *cited by* ALJ at A.R. 30.)  His impression was that Plaintiff had a lot of subjective complaints without objective findings, given her normal X-ray results.  (*Id.*)  He recommended a new MRI to confirm her current complaints, which Plaintiff underwent on February 20, 2013. (*Id.*)

At a follow-up visit on March 11, 2013, Dr. Lederhaus found that the new February 20, 2013 MRI also demonstrated normal disc height at all levels, normal alignment, and confirmed his findings of January 25, 2013.  (A.R. 389 *cited by* ALJ at A.R. 30.)  He again noted that Plaintiff's pain is not from her lumbar spine and does not clinically appear to be from her left hip, and its origin is uncertain. (*Id.*)  Dr. Hanh, a radiologist who interpreted Plaintiff's February 20, 2013 MRI of the lumbar spine, also found that it was an essentially normal study despite a mild degree of degenerative changes along the facets in the lower lumbar spine.  (A.R. 385 *cited by* ALJ at A.R. 30.)  Lastly, Dr. Ries who treated Plaintiff on April 22, 2013 for leg pain stated that Plaintiff's X-rays from January 2013 and repeat MRI of her lumbar spine from February 2013 were normal and showed "mild degenerative changes only, primarily at the L4-L5 and Lf-S1 levels."  (A.R. 376 *cited by* ALJ at

A.R. 30.)  Performing EMG/nerve conduction studies on Plaintiff, Dr. Ries noted that Plaintiff was neurologically intact and ambulatory.  (A.R. 379.)

After summarizing the above findings, the ALJ reasoned that Dr. Steiger's interpretation of the February 20, 2013 MRI as showing disc bulges at L3-L4, L4-L5, and L5-S1 and degenerative disc disease at L3-L4 and L4-L5 was at odds with the interpretation of the same by radiologist Dr. Hahn, which was generally corroborated by Drs. Lederhaus, Ries, and adopted by the ME.  (A.R. 30 n. 3.)  This reasoning is supported by the record.

First, Dr. Hanh found "mild degree of hypertrophic degenerative changes . . . along the facets of the lower lumbar spine at the level of L4-L5 and L5-S1 bilaterally," but did not mention disc bulges or the L3-L4 level.  (A.R. 385.)  Second, the reports of Drs. Lederhaus and Ries appear to corroborate Dr. Hanh finding.  (*See, e.g.,* A.R. 386, 389; 376.)  Third, the ME did, indeed, adopt Dr. Hanh's findings and stated that the MRI of 2005 showed problems which "the current one did not."  (*See* A.R. 71.)  Lastly, the ME opined that at least as of February 20, 2013, "there is documented evidence that I'm comfortable with that leads me to believe that [Plaintiff] has improved."  (*Id.*)

Accordingly, the ALJ offered specific and legitimate reasons for discounting Dr. Steiger's opinion, after properly addressing conflicts in the medical evidence.

## C. Any Error In The ALJ's Additional Reasons For Discounting Dr. Steiger's Opinion Was Harmless.

The ALJ discounted Dr. Steiger's opinion also because Dr. Steiger noted that Plaintiff used a walking stick on occasion, and there was no other mention of a

walking stick in the record.  (A.R. 33.)  Although there was no mention of a walking stick in the record prior to Dr. Steiger's report of February 2014, and indeed, Dr. Hoang's November 28, 2011 report noted that Plaintiff "does not use any assistive ambulatory device," (A.R. 302), at her May 29, 2014 hearing before the ALJ, Plaintiff stated that "until recently with physical therapy I could barely put any pressure on my leg without walking with a stick or something. . . ."  (A.R. 74.) Therefore, to the extent the ALJ discounted Dr. Steiger's opinion on the basis that there was "no other mention of a walking stick in the record" without addressing Plaintiff's own statement that she used a walking stick, her reasoning is not supported by substantial evidence in the record.  (A.R. 33.)

Similarly, the ALJ's reliance on Plaintiff's earlier disability report that she "did no climbing, crouching, kneeling, stooping, or lifting of greater than ten pounds," at her prior job, as a basis for discounting Dr. Steiger's characterization of Plaintiff's past work is also problematic because that "earlier disability report," referenced by the ALJ does not appear to be in the record.  (A.R. 33-34 *citing* "Exhibit 2E/3.")  However, because the ALJ provided independent, specific and legitimate reasons for discounting Dr. Steiger's opinion and substantial evidence supported her reasoning, the ALJ's failure to discuss the hearing testimony referencing a walking stick, and reliance on evidence that is not part of the Administrative Record does not warrant reversal.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("Even when the ALJ commits legal error, we uphold the decision where that error is harmless," meaning that "it is inconsequential to the ultimate nondisability determination," or that, despite the legal error, "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.")

//

//

1
2

**IV.    The ALJ's Evaluation of the Opinion of Dr. Lynch**

3
4
5
6
7
8
9
10
11

Plaintiff first presented to pain management specialist Dr. Marc Lynch on June 3, 2013 for pain in her low and mid-back that began when she fell and injured herself at work in January 2005. (A.R. 414.)  The following summary of Plaintiff's treatment with Dr. Lynch is based on Plaintiff's account in the Joint Stipulation. (Joint Stip. at 2.)  Dr. Lynch's examination showed tenderness in the paralumbar, parathoracic, and buttocks muscles and increased facet pain with lumbar rotation (A.R. 415).  Dr. Lynch diagnosed lumbago, lumbosacral (A.R. 414) for which he scheduled medial branch blocks and refilled her Vicodin (A.R. 415).  Dr. Lynch administered medial branch nerve blocks on June 25, 2013 (A.R. 419).

12
13
14
15
16
17
18
19
20
21

At a follow-up appointment on July 8, 2013, Plaintiff reported significant but temporary relief of her pain with the nerve blocks, but her leg pain remained, aggravated by walking or prolonged sitting (A.R. 411).  Examination showed subjective pain and tingling in the right L3, L5, and S1 dermatomes; mild mid-lumbar pain, mildly increased with extension (A.R. 412).  Dr. Lynch again reviewed Plaintiff's EMG, MRI, and X-ray results and recommended a lumbar epidural injection, acknowledging that she uses marijuana for sleep only, and refilled her Vicodin (A.R. 412).  He recommended regular exercise such as tai chi or yoga (A.R. 412).  He administered an epidural steroid injection on July 25, 2013 (A.R. 419).

22
23
24
25
26
27
28

On August 12, 2013, Plaintiff reported to Dr. Lynch that she was doing "much better" with no more radicular pain and her low back pain significantly improved as well (A.R. 409).  At that time, examination showed bilateral mid- and lower thoracic tenderness with palpation, increased with flexion and rotation (A.R. 410).  Dr. Lynch refilled her Vicodin, and on September 6, 2013, he administered thoracic facet injections (A.R. 410, 417).  On September 9, 2013, Plaintiff stated

that her back was "much better," although she still had spasms in the low back (A.R. 405). At that time, examination showed lumbar paravertebral tenderness with palpation and bilateral spasms with no evidence of exaggerated pain behavior (A.R. 406). Dr. Lynch prescribed Zanaflex and Vicodin and ordered massage and acupuncture (A.R. 406).

On October 7, 2013, Plaintiff returned to Dr. Lynch with "significant relief" to her mid-back region for about three weeks, before her pain and spasms returned. (A.R. 402). At that time, examination showed tenderness to palpation of the lower thoracic and lumbar muscles with moderate spasms (A.R. 403). On October 28, 2013, Dr. Lynch administered trigger point injections along with ultrasound (A.R. 398-401). On November 5, 2013, Plaintiff reported only a few hours of relief of her mid-back pain following the trigger point injections, but that the left leg pain and numbness continued, whereas the right leg symptoms had significantly improved (A.R. 395). Examination, at that time, showed mild tenderness in the thoracic and lumbar regions with spasms, as well as subjective pain, numbness, and weakness in the left lower extremity, worse in the L5 and S1 nerve root distributions to the ankle (A.R. 396). Dr. Lynch prescribed Neurontin in addition to Vicodin (A.R. 396).

On January 30, 2014, Plaintiff reported to Dr. Lynch that the last series of lumbar epidural injections administered that month had helped to reduce her pain and that her pain was well managed on her current medication and injections regimen (A.R. 510, 508). On March 27, 2014, she reported going to physical therapy but that her low back pain in the sacroiliac region had increased (A.R. 474). Examination at that time revealed mild spinal tenderness in the thoracic region; spasms; and subjective pain, numbness, and weakness in the left lower extremity, worse in the L5 and S1 distributions to below the knee (A.R. 475). Plaintiff received sacroiliac joint injections on April 17, 2014 and her medication was

refilled.  (A.R. 472, 475.)

On April 1, 2014, Dr. Lynch completed a form questionnaire and assessed functional limitations stemming from Plaintiff's chronic pain, thoracic and lumbar spondylosis, and lumbar degenerative disc disease with radicular pain in the lower extremities.  (A.R. 461-67.)  Dr. Lynch stated that the February 20, 2013 MRI and X-rays of January 23, 2013 as well as positive clinical findings of limited range of motion, tenderness, muscle spasm and muscle weakness, support his diagnosis. (A.R. 461-62.)  Dr. Lynch found that, in a regular, eight-hour workday, Plaintiff could sit for a total of no more than two hours and stand/walk no more than one hour, with the need to get up and move around every 20 minutes for 20 minutes each time; that she could lift and carry up to 5 pounds frequently and 10 pounds occasionally; that her symptoms would be severe enough to "constantly" interfere with her attention and concentration; that she would be incapable of tolerating even a "low stress" work environment; and that she would likely miss more than three workdays per month due to her symptoms (A.R. 463-66).  Dr. Lynch stated in the form that he treated Plaintiff approximately once per month between her first visit on June 3, 2013 and April 1, 2014.  (A.R. 461.)  In response to the question "what is the earliest date that the description of symptoms and limitations in this questionnaire applies," Dr. Lynch stated "2005."  (A.R. 466.)

In a narrative report dated April 27, 2014, Dr. Lynch acknowledged Plaintiff's imaging studies of the lumbar spine showed multiple level degenerative changes in both the discs and the facets as well as small disc protrusions at multiple levels.  (A.R. 469.)  Imaging studies of Plaintiff's thoracic spine showed degenerative changes of the facets as well.  (*Id*.)  He stated that her subjective complaints were consistent with imaging and EMG; that her degenerative changes have no cure and will slowly progress over the  years.  (*Id*.)  Dr. Lynch also stated

that Plaintiff had an "inability to do *any* lifting, repeatedly for the substantially in short periods of time without exacerbation of her back pain."  (A.R. 469) (emphasis added) (any errors in original).

A. <u>The ALJ Provided Specific and Legitimate Reasons in Evaluating Dr. Lynch's Opinion.</u>

The ALJ gave Dr. Lynch's opinion little weight because (1) his opinion "is inconsistent with the medical evidence as previously described," particularly because he "stated that his [assessed] limitations applied since 2005 notwithstanding the medical improvement shown by the recent radiographical evidence" and (2) he altered his initial characterization of a February 2013 MRI, without explanation. (A.R. 35.)

As a general rule, the opinion of a treating doctor is given greater weight than those of doctors who do not treat a plaintiff.  *See Lester*, 81 F.3d at 839.  The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison,* 759 F.3d at 1012.  When, as here, the opinion being rejected is that of a treating physician, but is contradicted by another medical opinion, the ALJ is required to articulate "specific and legitimate" reasons supported by substantial evidence for discounting it.  *Id*.

i. <u>Dr. Lynch's opinion was inconsistent with the medical evidence.</u>

The ALJ assigned little weight to Dr. Lynch's opinion because Dr. Lynch stated that Plaintiff's limitations applied since 2005 notwithstanding the medical improvement shown by the recent radiographical evidence.  (A.R. 35.)  An ALJ is entitled to consider inconsistencies between a doctor's testimony and the record as a

1   whole.   *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)("Generally, the more

2   consistent an opinion is with the record as a whole, the more weight we will give to

3   that opinion.").   An ALJ is not required to give great weight to conclusions in

4   medical opinions that were inconsistent with the other evidence of record.   *See*

5   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

7       Although Dr. Lynch's assessment in this case may not have been inconsistent

8   with his own interpretation(s) of the February 20, 2013 MRI, it was inconsistent

9   with other doctors' interpretation of the same imaging study.   As previously

10   discussed with respect to Dr. Steiger, the ALJ properly resolved the conflict in MRI

11   interpretation albeit in favor of Drs. Hanh, Lederhaus, and Ries rather than Dr.

12   Lynch.   (*See supra* at 12-15.)   Having done so, the ALJ permissibly found that Dr.

13   Lynch's failure to consider or note any improvement in Plaintiff's condition

14   between 2005 and 2013 was inconsistent with other evidence of record.   It is well-

15   established that an inconsistency between a medical opinion and clinical findings

16   such as the reading of the February 20, 2013 MRI is a proper basis for an ALJ's

17   rejection of that opinion. *See Morgan*, 169 F.3d at 600-02.   Accordingly, this is a

18   specific and legitimate reason for affording little weight to the opinion of Dr. Lynch

19   assessing limitations on Plaintiff.

21       ii.   <u>Dr. Lynch's records and assessments contained internal inconsistencies.</u>

23       Notwithstanding Dr. Lynch's interpretation of Plaintiff's February 20, 2013

24   MRI that was controverted by other doctors, the ALJ cited Dr. Lynch's own

25   internally inconsistent interpretations of that MRI as a basis for giving his opinion

26   little weight.   As the ALJ found, while reviewing that MRI on June 3, 2013, Dr.

27   Lynch described it "as showing (only) 'severe facet degenerative changes.'"   (A.R.

28   33 *citing* A.R. 415; *see also* A.R. 35.)   However, on April 27, 2014, Dr. Lynch

described that same MRI[3] "as showing (alternatively): multiple degenerative changes in both the discs and the facets as well as small disc protrusions at multiple levels <u>and</u> facet degenerative changes and disc protrusions at multiple levels." (A.R. 33 *citing* A.R. 469, 488; *see also* A.R. 35) (emphasis in original).

After "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," the Court finds the evidence supports the ALJ's conclusion that Dr. Lynch made inconsistent assessments based on the same objective data. *Lingenfelter*, 504 F.3d at 1035 (internal quotation marks and citation omitted). Indeed, Dr. Lynch's June 3, 2013 notes indicate that he initially characterized Plaintiff's MRI as showing "severe facet degenerative changes," (A.R. 415) while his April 27, 2014 narrative report states that "[i]maging of her lumbar spine reveals multiple level degenerative changes in both the discs and the facets as well a [sic] of the facets as well." (A.R. 469, 488.) In essence, Dr. Lynch appears to find more problems with Plaintiff's spine on April 27, 2014 than on June 3, 2013, although both findings are based on the same February 20, 2013 MRI.

Additionally, the ALJ noted that Dr. Lynch's April 1, 2014 impairment questionnaire somewhat contradicted his April 27, 2014 narrative report. (A.R. 34 n.9.) In his impairment questionnaire on April 1, 2014, Dr. Lynch assessed that Plaintiff could frequently lift up to 5 pounds and occasionally lift up to 10 pounds. (A.R. 464.) However, on April 27, 2014, while referencing the impairment questionnaire, Dr. Lynch stated that Plaintiff had an "inability to do *any* lifting. . ." (A.R. 469) (emphasis added).

The Ninth Circuit held that discrepancies are a lawful reason for rejecting a

---

[3] Although Dr. Lynch does not specifically reference the MRI by date, the Court presumes—as do the parties (*see* Joint Stip. at 11, 16)—that he is discussing the February 20, 2013 imaging in his narrative report of April 27, 2014. (A.R. 469.)

medical opinion.  *See Johnson*, 60 F.3d at 1433 (ALJ properly rejected medical opinion where doctor's opinion was contradicted by doctor's own contemporaneous findings); *see also Bayliss*, 427 F.3d at 1216 (where a doctor's clinical notes contradict his statement assessing a plaintiff's ability, such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding that plaintiff's ability.)  Therefore, this is a specific and legitimate reason for affording little weight to Dr. Lynch's assessment of limitations.

Because the ALJ provided multiple specific and legitimate reasons for giving little weight to the opinions of Drs. Steiger and Lynch—and the ALJ's evaluation of those opinions is the sole challenge presented to this Court—upon review of the issues presented, the Court concludes that the ALJ did not commit reversible legal error.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

23